Following a hearing after notice, a judge in the District Court extended a harassment prevention order pursuant to G. L. c. 258E. The defendant appeals, arguing that the plaintiff failed to meet her burden of proving harassment under the statute.[2] We affirm.
The judge heard the following facts and, at the end of the hearing, explicitly credited the plaintiff's testimony. The plaintiff and the defendant are neighbors; their yards abut one another's at the back of each property. Apparently, at some time before the events at issue, there was an incident involving the plaintiff's dog and the defendant's son, and possibly other members of the defendant's family.[3] Relations between the two families had become strained, to say the least. At the hearing after notice, the plaintiff testified that the defendant had "been consistently like just stalking, going crazy. We had to put an extension on our fence so he wouldn't take videos of my backyard. I have two young children. I fear [for] them. Pictures of-he's pulling things of my Facebook. Just-I've had to block him from everything."
The first of three designated harassing acts occurred on October 13, 2016, at approximately 2:30 P.M. The plaintiff saw the defendant from her window in his van, which was parked on the street that runs along the side of her house (not in front of his own house), for approximately twenty minutes. When she went outside and got into her own car, "he pulled out right behind [her], blaring his horn, screaming profanity at [her], and swerved around [her] as [she] was trying to take a left." Her car windows were closed and the doors were locked, so she was unable to hear what the defendant was "screaming."
The second act occurred on October 30, 2016, at approximately 7:00 A.M. , when the defendant began yelling and swearing at the plaintiff over the six-foot fence that divides their property while she was in her yard with her dog and another dog she was caring for. According to the plaintiff, the defendant yelled to her "this better not be a f'n pitbull in your yard, you just-you f'n 'B,' you wait and see, you just wait and see, you have a cease and desist."[4] , [5] The defendant then threatened, "Don't get this dog out and see what happens" and instructed the plaintiff to "go get [her] piece of S-H-I-T husband."
The third act occurred on October 31, 2016, while the plaintiff was out in her neighborhood with her children trick or treating on Halloween night. The children were heading toward another neighbor's house (who lived on the side street across from the defendant's house) to get candy, when the plaintiff saw the defendant standing in the neighbor's driveway talking to someone. According to the plaintiff, the defendant then approached her children and she heard him say her six year old's name. She was walking behind her children and, when she heard her son's name, she asked the defendant not to speak to her children because she was "in fear that he-he has been going on for (inaudible) since the police dog incident, that [she didn't] want him associating with [her] children." The defendant then "got into [her] face, nose to nose, and started screaming" at her. He "put his hands up and he was yelling, 'Do something you f'n B, do something, I eff'n dare you. I just filed papers to take your house. How do you like that you eff'n B.' " A police report was admitted at the hearing supporting the plaintiff's testimony.
A neighbor who witnessed the October 31, 2016, incident testified at the hearing. The neighbor stated that he was having a conversation with the defendant and, when it ended, the defendant was walking back toward his own house when the plaintiff's children passed him on their way to get candy. The neighbor heard the defendant say to the children " 'nice costume' or something along those lines." He then saw the plaintiff walking toward his house and heard her yell "Don't talk to my kids." He then observed the plaintiff and defendant yelling at each other, and then saw the defendant "walking back to his house with his arms up [in the air] like this." The neighbor described the plaintiff as the aggressor in the incident; he testified that he did not hear the defendant make any threats to the plaintiff. Referring to the plaintiff's version of what the defendant said to her during the October 31 incident, the judge asked the witness, "No you didn't hear it or no it didn't happen." The witness responded, "I didn't hear it."[6]
At the conclusion of the hearing, as noted, the judge found the plaintiff's testimony credible. In his view, the neighbor did not provide a "totally" contradicting version of the third incident, because the neighbor specifically testified that he did not hear the defendant making threats to the plaintiff; "[h]e didn't say it didn't happen." In extending the order for one year, the judge found that the defendant had committed three separate harassing incidents, "including swerving around her, following her, swerving around her, the profanities and screaming at her in such a way to put her in fear, totally out of control on the 30th. And then the statements to her on the 31st. 'Just see what's going to happen.' " The judge amended the original, ex parte, stay away order, reducing it from twenty-five yards to ten yards, based on the distance from the plaintiff's house to the parties' dividing fence.
Discussion. "In reviewing the issuance of a civil harassment order under G. L. c. 258E, we consider whether the judge could find, by a preponderance of the evidence, together with all permissible inferences," that three or more acts did, in fact, occur. A.T. v. C.R., 88 Mass. App. Ct. 532, 535 (2015). "It is the plaintiff's burden to prove that each of the three qualifying acts was maliciously intended, defined by G. L. c. 258E, § 1, as being 'characterized by cruelty, hostility or revenge,' and, as pertinent here, that each act was intended by the defendant to intimidate the plaintiff or place the plaintiff in 'fear of physical harm or fear of physical damage to property.' " V.J. v. N.J., 91 Mass. App. Ct. 22, 25 (2017), quoting from O'Brien v. Borowski, 461 Mass. 415, 426-427 (2012). Further, the harassing acts must in fact cause fear, intimidation, abuse or damage to property, G. L. c. 258E, § 1, and "[i]n the determination whether the three acts 'did in fact cause fear, intimidation, abuse or damage to property,' it is 'the entire course of harassment, rather than each individual act that must cause fear or intimidation.' " A.T., supra, quoting from O'Brien, supra at 426 n.8.
Here, it is clear that the judge carefully observed the parties and the additional witness and listened thoughtfully to the evidence. "The 'final determination' of whether or not harassment in fact occurred [is] for the judge 'who has heard the evidence and can best determine its credibility' ...." After careful review, we are satisfied that the judge was warranted in extending the order. We see no error and certainly no abuse of discretion.
Modified order dated November 9, 2016, extending harassment prevention order affirmed.

Specifically, the defendant challenges the judge's finding that he committed "(i) [three] or more acts of willful and malicious conduct aimed at a specific person committed with the intent to cause fear, intimidation, abuse or damage to property and that does in fact cause fear, intimidation, abuse or damage to property." G. L. c. 258E, § 1, inserted by St. 2010, c. 23."

A lawsuit was pending, brought by the defendant against the local police department and the plaintiff's husband (a police officer in that department assigned to work with a police dog as part of the "K-9" unit), alleging that the plaintiff's husband's police dog "mauled" the defendant's wife and son.

The plaintiff insisted that she runs a dog minding and walking business from her home, not a kenneling business, and that she is licensed by the town to do so.

During the plaintiff's testimony, the judge stated that "witnessing how [the defendant] behaves in a courtroom, I can imagine only how he'd behave out on the street.... I mean, he can't control himself. Look at him. He can't control himself.... No, he's not helping himself. That's all I'm saying.... His behavior indicates to me what she's saying is probably true. I'm just telling you."

During cross-examination, the witness confirmed that he heard what the plaintiff said during the incident from "[ten] feet away" but "couldn't hear [the defendant] screaming at [the plaintiff] on the sidewalk right in front of [the witness's] house." Specifically, he testified, "No, I did not hear him."